UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DUMISANI MLUNGWANA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No.: 1:14-CV-339 |
| COVENANT CARE MARION LLC, | ) ) ) |
| Defendant. | ) |

## MEMORANDUM OF DECISION AND ORDER

This matter is before the court on the motion to dismiss filed by Defendant Covenant Care Marion LLC ("Affirma").[1] [DE 12.] Affirma filed a brief in support of its motion on that same date. [DE 13.] Defendant seeks dismissal of Count II of Plaintiff's complaint. Plaintiff Dumisani Mlungwana filed a response in opposition to the motion [DE 17] and Affirma filed a reply brief. [DE 18.] For the reasons discussed below, Defendant's motion to dismiss Count II of Plaintiff's complaint is GRANTED. Counts I, III, IV, and V of the complaint are not affected by this Order and remain pending.

## FACTUAL BACKGROUND

Mlungwana was employed by Affirma "as a PRN (as needed) registered occupational therapist (OTR) from July 2011 until March 11, 2012." (Complaint, p. 2, ¶ 6.). "Thereafter, he was employed by [Affirma] as a regular full time registered occupational therapist (OTR) until March 12, 2014, when his employment was terminated." (Complaint, p. 2, ¶ 7.). Mlungwana states that "[t]hroughout the last year of his employment, from March 2013, [Affirma] paid

---

[1] In its corporate disclosure statement filed pursuant to Fed.R.Civ.P. 7.1 [DE 11], Defendant states that its corporate name is "Affirma Rehabilitation, Inc., d/b/a Marion Rehabilitation & Assisted Living." Defendant refers to itself as Affirma in its pleadings and the court will do the same.

1

[him] at the rate of $40.00 per hour for each hour he worked, up to 40 hours per week."
(Complaint, p. 2, ¶ 8.). Mlungwana contends, however, that he worked an average of 55 hours per week during that last year. (Complaint, p. 2, ¶ 9.). He claims that he was paid $40.00 per hour for the first 40 hours that he worked each week, but received nothing for the hours that he worked in excess of 40 per week. (Complaint, p. 2, ¶ 10.). Mlungwana asserts that [Affirma] failed to pay him for the overtime that he worked. (Complaint, p. 2, ¶ 11.). Based on those allegations, Mlungwana filed this lawsuit and asserts claims against Affirma "for unpaid overtime pursuant to the Fair Labor Standards Act ("FLSA), 29 U.S.C. 207 and 213, unpaid wages pursuant to Indiana Code 22-2-5-2, 34-24-3, 22-2-9-2, and conversion, breach of implied contract, and unjust enrichment under Indiana common law." (Complaint, p. 1, ¶ 1). Count II of the complaint, the state law claim for conversion, is the only count at issue in Affirma's motion to dismiss.

## STANDARD OF REVIEW

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court presumes all well-pleaded allegations to be true, views them in the light most favorable to the plaintiff, and accepts as true all reasonable inferences to be drawn from the allegations. *Whirlpool Fin. Corp. v. GN Holdings, Inc.,* 67 F.3d 605, 608 (7th Cir. 1995). The Supreme Court has articulated the following standard regarding factual allegations that are required to survive dismissal:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations omitted). A complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Id.* at 547. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556).

Although the court must accept as true all well-pleaded facts and draw all permissible inferences in the Plaintiff's favor, it need not accept as true "threadbare recitals of a cause of action's elements, supported by mere conclusory statements. . ." *Id*. Legal conclusions can provide a complaint's framework, but unless well-pleaded factual allegations move the claims "from conceivable to plausible," they are insufficient to state a claim. *Id.* at 683 (quoting *Twombly*, 550 U.S. at 570).

## DISCUSSION

The parties do not dispute the applicable Indiana law regarding conversion (although they certainly debate its application to the facts of this case). Affirma summarized that law in its memorandum as follows:

> Conversion requires the knowing or intentional exertion of unauthorized control over the *personal property of another*. Ind. Code § 35-43-4-3(a) (emphasis added); *see also Huff v. Biomet, Inc.*, 654 N.E.2d 830, 835 (Ind.Ct.App. 1995) *overruled on other grounds*; *Stevens v. Butler*, 639 N.E.2d 662, 666 (Ind.Ct.App. 1994), *trans. denied*. Money is subject to conversion only if it is a "special chattel." A "special chattel" is "a determinative sum with which the defendant was entrusted to apply to a certain purpose." *Huff*, 654 N.E.2d at 835-36 (citing *Stevens*, 639 N.E.2d at 666). Failure to pay a debt does not constitute criminal conversion. *Id*. at 836 (citing *National Fleet Supply, Inc. v. Fairchild*, 450 N.E.2d 1015, 1019 (Ind.Ct.App. 1983)).

Def's. Mem., p. 3.

Affirma asks this court to dismiss Mlungwana's conversion claim because, it argues, it did not exercise control over property belonging to the Plaintiff, a necessary element in

3

establishing a *prima facie* case of conversion under Indiana law. Affirma argues that its "alleged failure to distribute the correct amount of *its* money to Mlungwana for services he performed does not constitute conversion." *Id*., p. 1 (italics in original). According to Affirma, "Mlungwana's conversion claim is about Affirma's money, not Mlungwana's. . . . Mlungwana cannot maintain his conversion claim without evidence that Affirma retained *his personal property*." *Id*., p. 4 (italics in original).

Affirma contends that the cases it cites in support of its argument are on point and establish as a matter of law that money allegedly owed as wages does not constitute a "special chattel" and, therefore, cannot be the subject of a conversion claim.

For example, in *Huff v. Biomet Inc*., *supra*, the court held that a "special chattel" is "a determinate sum with which the defendant was entrusted to apply to a certain purpose." *Huff*, 654 N.E.2d at 835-36 (citing *Stevens*, 639 N.E.2d at 666). Failure to pay a debt does not constitute criminal conversion. *Id*. at 836 (citing *National Fleet Supply*, 450 N.E.2d at 1019). Furthermore, "a plaintiff must allege sufficient facts to 'allow the Court to draw the reasonable inference that the Plaintiff [] entrusted determinable sums of money to the Defendants to apply for a certain purpose.'" *Foster v. W-Transfer, Inc.*, 2012 WL 2376188 at *1 (S.D.Ind. June 22, 2012) (quoting *Puma v. Hall*, 2009 WL 5068629 at *4 (S.D. Ind. Dec. 17, 2009)).[2]

Indeed, the cases cited by Affirma support the company's position. *See National Fleet Supply*, 450 N.E.2d at 1019 (failure to pay a debt is not conversion under Indiana law); *Huff*, 654 N.E.2d at 836 (employer did not commit criminal conversion when it wrongfully withheld

---

[2] In *Puma*, the plaintiffs were mortgage loan officers who brought suit for unpaid wages and asserted claims under the Fair Labor Standards Act and various state statutes. They also alleged that defendants were liable for conversion for failure to pay those wages. The court rejected the conversion claim, holding that ". . . under Indiana law the failure to pay an indebted sum of money does not constitute conversion." *Puma*, 2012 WL 5068629, at *4 (citing *Tobin v. Ruman*, 819 N.E.2d 78, 89 (Ind.Ct.App. 2004)).

commission payments from employee); *Puma*, 2012 WL 5068629, *supra*, n. 2; *Tobin*, 819 N.E.2d at 89 (employer did not commit conversion by wrongfully withholding retained earnings because withholding was, at most, a failure to pay a debt).

In its reply brief, Affirma cites yet another case from the Southern District of Indiana that addressed a conversion claim based on unpaid compensation. In *Dunlap v. Switchboard Apparatus, Inc.*, 2012 WL 1712554 (S.D.Ind. May 15, 2012) the plaintiffs alleged that they were not paid for engineering services they performed for defendants. They brought several claims against defendants, including a claim for conversion. The court rejected the conversion claim and held that ". . . Indiana law is settled that failure to pay a debt 'does not constitute conversion as a matter of law' *Puma v. Hall,* 2009 WL 5068629, at *4 (S.D.Ind. Dec.17, 2009); *see also Tobin v. Ruman,* 819 N.E.2d 78, 89 (Ind.Ct.App. 2004) (wrongful withholding of retained earnings is, at most, a failure to pay a debt, which does not constitute conversion as a matter of law)."
*Id*. at *9. The *Dunlap* holding, then, is also in line with *Huff*, *Tobin*, *Foster,* and *Puma*.

Affirma contends that Mlungwana's conversion claim "boils down to the same allegation the courts rejected in *Dunlap*, *Puma*, and *Tobin*--the defendant committed conversion because it failed to pay for services performed." Def.'s Reply, p. 2. "Mlungwana's conversion claim fails as a matter of law because Indiana law does not recognize a claim for conversion when the employer's conduct amounts to nothing more than a failure to pay a debt or withholding of plaintiff's earnings." *Id*. (citing *National Fleet*, *Huff*, *Puma*, and *Tobin*).

In his response, Mlungwana argues that the cases on which Affirma relies are not on point and "can be materially distinguished from the instant case." Pltf.'s Resp., p. 3. Mlungwana

5

argues, for example, that Affirma's reliance on the *Tobin* case is misplaced. The plaintiff in *Tobin*, a lawyer who separated from the defendant law firm, brought a conversion claim (among others, including a claim under the Wage Payment Act) against the firm alleging that the firm failed to pay him a bonus that was due. Instead of directly paying Tobin the bonus, it became part of his minority interest in the firm. Mlungwana contends that the *Tobin* case stands only for the proposition that "'[b]ecause there was no violation of the Wage Payment Act, Tobin is ineligible for treble damages and attorney fees.'" Pltf.'s Resp., p. 3 (quoting *Tobin*, 819 N.E.2d at 88). Mlungwana argues that "[u]nlike Tobin, who was compensated with a bonus that was set over to his equity interest in the firm, Mlungwana has <u>never</u> been compensated <u>in any form</u> for the overtime wages that he earned and entrusted to Defendant until payday." *Id*., p. 4 (underlining in original).

In its reply brief, Affirma asserts that "Mlungwana incorrectly argues *Tobin* is inapplicable because he focuses on the *Tobin* court's analysis of Count II of Tobin's amended complaint." Def.'s Reply, p. 3. In Count II, *Tobin* asserted claims for breach of contract and violation of the Wage Payment Act, alleging that the defendant was liable for treble damages and attorneys' fees for failing to pay Tobin a bonus he claimed he was entitled to. Affirma states that "[t]he *Tobin* court's analysis of the Wage Payment Act and breach of contract claims is irrelevant to this court's determination of the viability of Mlungwana's conversion claim. What matters here is the *Tobin* court's analysis of Tobin's *conversion claim* (Count III of Tobin's amended complaint). That analysis is directly applicable to evaluation of Mlungwana's conversion claim. Tobin, like Mlungwana, alleged his employer committed conversion because it wrongfully withheld money it owed him." *Id*.

In fact, in *Tobin*, the court addressed the plaintiff's conversion claim and held as follows:

> As to whether or not [defendant] committed criminal conversion, [defendant] argue[s] that any failure to pay Tobin his share of the retained earnings is, at most, the failure to pay a debt, which does not constitute criminal conversion as a matter of law. We agree. Tobin has not shown that he entrusted money to [defendant] for any particular purpose; to the contrary, the funds at issue are and always have been in the possession of and generated by [defendant]. [Defendant's] wrongful withholding of these funds from Tobin is, at most, the failure to pay a debt, which does not constitute criminal conversion as a matter of law.

*Tobin*, 819 N.E.2d at 89 (citing *Huff,* 654 N.E.2d at 836). This court agrees that Mlungwana's application of *Tobin* is misplaced. The holding in *Tobin* regarding the plaintiff's conversion claim is in line with *Huff*, *National Fleet*, *Foster*, *Puma*, and *Dunlap*. In all of those cases, as discussed above, the courts held that a claim for unpaid wages cannot be the basis for a conversion claim.

Affirma contends that "[t]he similarity between Mlungwana's claim and Tobin's claim requires application of the *Tobin* decision." Def.'s Reply, pp. 3-4. "Indiana courts simply do not recognize a claim for conversion based on failure to pay for services rendered. Like the unsuccessful plaintiffs in *Dunlap*, *Tobin*, *Puma*, and *Huff*, Mlungwana alleges conversion because at most, Affirma withheld money and failed to compensate him for services he performed. Affirma's conduct does not constitute conversion under Indiana law even if the amount at issue is determinable and the plaintiff's entitlement to the money is not in question." *Id*. (citing *Tobin*, 819 N.E.2d at 89).

Mlungwana also attempts to distinguish *Foster v. W-Transfer*, *supra*, and states that "[i]n *Foster*, plaintiff failed to satisfy the 'entrustment' element of conversion . . . [because] the wages due the plaintiff were not transferred directly from defendant employer to plaintiff employee; instead, the wages were first directed to a third-party, in this case, the State, thereby obviously precluding a finding that [plaintiff] entrusted the wages to [defendant]." *Id*. But, Mlungwana

7

says, in the present case no such third party was involved and "Mlungwana did entrust his earned overtime wages directly to Defendant . . . ." *Id.*

In *Foster*, the plaintiff was a teamster and defendant, W-Transfer, was a private trucking company that occasionally leased its employees to the state or state agencies to provide services on public works projects. *Foster*, 2012 WL 2376188 at *1 (S.D.Ind. June 22, 2012). Plaintiff contended that he was owed wages for work he did on such projects and that W-Transfer's failure to pay him those wages constituted conversion under Indiana law. The court rejected Foster's conversion claim, based primarily on the fact that Foster could not establish that the wages he claimed he was owed constitute a "special chattel." The court explained as follows:

> The case law is clear that a plaintiff must allege sufficient facts to "allow the Court to draw the reasonable inference that the *Plaintiff* [ ] entrusted determinable sums of money to the Defendants to apply for a certain purpose." . . . In order to satisfy the "entrustment" element, the money at issue must be the plaintiff's own, whereas here, the funds of a third party, namely, the State's, are those being entrusted to reimburse contractors for wages to be paid to their employees. *Compare Roake* [*v. Christensen*]*,* 528 N.E.2d [789,] 791 [Ind. Ct. App. 1988] (finding conversion where an employer allowed a health care insurance policy to lapse while continuing to accept checks to pay for it from an employee), *with Tobin,* 819 N.E.2d at 89 (holding that failure of an employer to pay employee retained earnings is at most failure to pay a debt). As to the "determinant sum" element, State funds for public works projects are not earmarked for payment of each employee, but are part of a larger heterogeneous pool that can be held until the contractor pays his debts. . . . Because these funds are co-mingled they cannot be considered a determinant sum, thereby precluding the classification of money as a special chattel under these facts.

*Id.* at *4 (additional internal citations and footnote omitted).

So while it is true that the decision in *Foster* turned largely on the fact that the funds earmarked to pay plaintiff were entrusted to a third party, it is also true that the court in *Foster* recognized that the reasoning and holding in *Tobin* precluded plaintiff's claim for conversion.

Having reviewed the parties' briefs and the applicable law, this court concludes that Affirma's argument for dismissal is well taken. While Mlungwana makes a gallant effort to

demonstrate that the cases on which Affirma relies are factually distinguishable from this case, he ultimately succeeds only in making distinctions without a difference. Mlungwana has failed to state a claim for conversion against Affirma, even when all of his factual assertions are taken as true, since his assertions fail to establish the elements of that cause of action. Accordingly, his claim must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

## CONCLUSION

For the reasons discussed above, Defendant's Motion to Dismiss Plaintiff's Conversion Claim [DE 12] is hereby GRANTED and Count II of Plaintiff's complaint is DISMISSED. Counts I, III, IV, and V of the complaint are not affected by this Opinion and Order and remain pending.

Entered: April 13, 2015.

                                                    s/ William C. Lee
                                                    William C. Lee, Judge
                                                    United States District Court